1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   CAROLYN RYGG, et al.,                          CASE NO. C14-237 MJP

11                        Plaintiffs,               ORDER ON MOTIONS

12        v.

13   DAVID F HULBERT, et al.,

14                        Defendants.

15

16        THIS MATTER comes before the Court on Defendants' Motions to Strike the Proposed

17   Second Amended Complaint (Dkt. Nos. 89, 92), Plaintiffs' Motion to Transfer Case to the 9th

18   Circuit for Designation of an Out of State Judge (Dkt. No. 63), Defendants' Motions to Dismiss

19   (Dkt. No. 50, 53, 65, 66), Plaintiffs' Motions to Disqualify (Dkt. Nos. 43, 55, 56, 57),  Plaintiffs'

20   Motion for Preliminary Injunction (Dkt. No. 107), Defendants' Motion to Declare Plaintiffs

21   Vexatious Litigants (Dkt. No. 51), and Defendants' Motion for Sanctions (Dkt. No. 90).  Having

22   thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument

23   unnecessary and rules as follows:  (1) Defendants' Motions to Strike the Proposed Second

24   Amended Complaint are GRANTED; (2) Defendants' Motions to Dismiss are GRANTED with

1  prejudice; (3) Plaintiffs' Motion to Transfer Case, Plaintiffs' Motions to Disqualify, and

2  Plaintiffs' Motion for a Preliminary Injunction are DISMISSED as moot; (4) Defendants'

3  Motion to Declare Plaintiffs Vexatious Litigants is GRANTED; and (5) Defendants' Motion for

4  Sanctions is GRANTED and Plaintiffs' Cross-motion for Sanctions is DENIED.

5                                                    **Background**

6          This case began as a property boundary line dispute filed in Snohomish County Superior

7  Court in 2004.  The case spent considerable time in the state court system, including several

8  appeals to the Court of Appeals and petitions for review to the Washington Supreme Court.

9  Ultimately, the Ryggs (Carolyn Rygg and her son Craig Dilworth) were not satisfied with the

10  results of their state court litigation, and filed suit in federal court alleging a vast conspiracy to

11  deprive them of justice and property, to invade their privacy, and to violate state and federal law.

12  Rygg v. Hulbert, C11-1827-JLR.  Many of the judges and attorneys who played a role in the

13  state court litigation were named personally as defendants in the federal action.

14          Judge Robart dismissed 48 of the Ryggs' 50 causes of action, and held a jury trial on the

15  remaining two claims.  The jury returned a verdict for the Reinertsens, the Ryggs' neighbors.

16  The Ryggs appealed to the Ninth Circuit, and that appeal is still pending.

17          While their appeal was pending, the Ryggs filed a second suit in federal court.  Rygg v.

18  Hulbert, C13-864-JLR.  The new complaint was materially similar to the one from the first

19  action, centering around the same nexus of facts and including most of the same defendants, but

20  adding as defendants the attorneys from the first action.  Noting that the complaint merely

21  repeated claims previously brought in the first action, Judge Robart dismissed all claims in the

22  second action.  The Ryggs once again appealed to the Ninth Circuit, and that appeal is also

23  pending.

24

1    This case is the Ryggs' third suit in federal court, and alleges essentially the same causes
2  of action against the same defendants, adding new state and federal RICO claims and claims
3  related to Defendants' litigation conduct.
4    On September 18th, 2014, while this case was stayed pending resolution of the fourteen
5  motions filed, the Ryggs filed a fourth federal suit with this Court, seeking an injunction against
6  a pending state criminal prosecution.  Dilworth v. City of Everett, 14-1434-MJP.  The Ryggs are
7  being prosecuted or threatened with prosecution for assaulting their neighbor Kaaren Reinertsen
8  in connection with the boundary line dispute.

9                                              **Discussion**

10   I.      Motions to Strike Proposed Second Amended Complaint
11    Defendants ask the Court to strike Plaintiffs' Second Amended Complaint because it was
12  filed without leave of court.  (Dkt. Nos. 89, 92, 93.)  Plaintiffs argue that leave was not required
13  because their First Amended Complaint was filed before their original complaint was served on
14  Defendants.  (Dkt. No. 99.)  The motions to strike are GRANTED.
15    Federal Rule of Civil Procedure 15 provides that "[a] party may amend its pleading once
16  as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a
17  responsive pleading is required, 21 days after service of a responsive pleading or 21 days after
18  service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Plaintiffs filed their
19  Complaint on February 14, 2014.  (Dkt. No. 1.)  They filed an Amended Complaint on March 7,
20  2014.  (Dkt. No. 4.)  Plaintiffs filed a Motion to Amend Complaint and a Second Amended
21  Complaint on August 7, 2014, (Dkt. Nos. 78, 79), but subsequently filed a notice withdrawing
22  the Motion to Amend on the basis that Rule 15 allows a party to amend "once as a matter of
23  course . . . 21 days after service of motion under Rule 12(b)."  (Dkt. No. 88 at 1.)
24

1    The language of the Rule is clear: a party may amend a pleading once as a matter of

2    course.  See Lamb v. Chicago Title Ins. Co., 2014 WL 931533, at *2 (W.D. Wash., Mar. 10,

3    2014) ("Rule 15(a)(1) allows a party to amend its pleading once without first obtaining

4    permission from the court or the opposing party.  Plaintiffs fail to explain why their amendment

5    before removal does not count as their one amendment . . . ."); C. Wright, A. Miller & M. Kane,

6    Federal Practice and Procedure, § 1480 (2010).  Plaintiffs appeared to recognize that this

7    language required them to seek the Court's leave to file an amended complaint, and their

8    subsequent attempt to justify withdrawing their motion for leave to amend is unavailing.

9        Plaintiffs contend that the amended complaint will expedite the determination of issues

10    and that Defendants will not be prejudiced.  The Court disagrees.  Defendants have already spent

11    significant time addressing the issues as presented in the First Amended Complaint.

12    Furthermore, because the vast majority of the claims are simply reiterating claims already

13    presented to various courts, there is no reason to believe that any amendment would be anything

14    but futile.  Given the course of the litigation to date and the analysis below, the interests of

15    justice do not require allowing an amendment.  Motions GRANTED.

16        II.     Motions to Dismiss

17            A.     Legal Standards

18        A complaint must be dismissed under Fed.R.Civ.P.12(b)(1) if, considering the factual

19    allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the

20    Constitution, laws, or treaties of the United States, or does not fall within one of the other

21    enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or

22    controversy within the meaning of the Constitution; or (3) is not one described by any

23

24

1  jurisdictional statute.  Baker v. Carr, 369 U.S. 186, 198 (1962); D.G. Rung Indus., Inc. v.

2  Tinnerman, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986).

3        Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a

4  claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must

5  construe the complaint in the light most favorable to the non-moving party. Livid Holdings Ltd.

6  v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005). The Court must accept all

7  well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of

8  the plaintiff. Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998).

9        Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim to

10  relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A

11  claim is plausible on its face "when the plaintiff pleads factual content that allows the court to

12  draw the reasonable inference that the defendant is liable for the misconduct alleged." Aschcroft

13  v. Iqbal, 556 U.S. 662, 678 (2009). As a result, a complaint must contain "more than labels and

14  conclusions, and a formulaic recitation of the elements of a cause of action will not do."

15  Twombly, 550 U.S. at 555.

16                B.     Defendants and their Arguments

17        Washington State Bar Association ("WSBA") Defendants move to have all claims

18  against them dismissed under 12(b)(1) and 12(b)(6).  WSBA Defendants argue that (1) Plaintiffs

19  lack standing to complain about disciplinary action that may be taken against their lawyer and

20  therefore the Court lacks subject matter jurisdiction; (2) WSBA Defendants have absolute quasi-

21  judicial immunity from claims for monetary damages arising out of their performance of

22  disciplinary functions; and (3) Plaintiffs' First Amended Complaint fails to state a claim upon

23  which relief can be granted.

24

Defendants Judge Larry McKeeman, former Judge David Hulbert, Washington Supreme Court Commissioner Steven Goff, Justice Barbara Madsen, Justice Charles Johnson, Justice Mary Fairhurst, Justice Debra Stephens, Justice Gerry Alexander, Judge Michael Spearman, Judge Linda Lau, Judge Stephen Dwyer, Judge Thomas Wynne, Senior Counsel Todd Bowers, and Assistant Attorney General Suzanne LiaBraaten (collectively, "State Defendants") move to have all claims against them dismissed under Rule 12(b)(6), arguing that (1) their conduct is protected by the Noerr-Pennington Doctrine; (2) judicial defendants are entitled to absolute judicial immunity; (3) all state defendants are entitled to qualified immunity; and (4) the complaint fails to state a plausible claim upon which relief can be granted.

The remaining Defendants (collectively, "Private Party Defendants") move to dismiss the entire Amended Complaint for failure to state a claim under Rule 12(b)(6), arguing the complaint consists of (1) duplicative claims; (2) claims that do not plead all essential elements of a claim; and (3) claims barred by various immunities.

For the reasons detailed below, all claims against WSBA Defendants, State Defendants, and Private Party Defendants are DISMISSED, and Plaintiffs' cross-motion to strike factual misrepresentations and omissions is DENIED.  Counts 1-10 are dismissed for failure to state a plausible claim for relief; counts 11-14, 19-22, 24-25, 27-33, and 35-36, duplicative of claims filed in earlier federal suits, are dismissed under Adams v. Cal. Dep't of Health Servs., 487 F.3d 684 (9th Cir. 2007); counts 23 and 26 are state-law claims, over which the exercise of supplemental jurisdiction is denied; and counts 15-18 and 34 are dismissed because they involve conduct protected by absolute judicial immunity.

C.     Claims Dismissed

i.     Counts 1-10 (Federal and state RICO claims)

Counts 1-10 of the First Amended Complaint (Dkt. No. 4) are DISMISSED because Plaintiffs fail to plead their RICO claims with sufficient particularity.  "We have applied the particularity requirements of rule 9(b) to RICO claims." Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 541 (9th Cir. 1989).  "Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  Id. (citation omitted) (allegations insufficient where the complaint does not attribute specific conduct to individual defendants).  Even under the less demanding pleading standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), Plaintiffs fail to state a plausible claim for relief.

A civil RICO claim requires the showing of an "enterprise," which is "proved by evidence of an ongoing organization, formal or informal, and by evidence that various associates function as a continuing unit." Odom v. Microsoft Corp., 486 F.3d 541, 549 (9th Cit. 2007) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).  There is no "pattern of racketeering activity" if there is "a single episode with a single purpose which happened to involve more than one act taken to achieve that purpose."  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1535 (9th Cir. 1992).

The basis of Plaintiffs' allegation of a criminal enterprise is a common interest defense agreement among some of the Defendants in the Ryggs' first federal suit.  (Dkt No. 4 at 9, ¶ 44; Dkt. No. 76 at 2.)  The racketeering activities and predicate acts alleged include mail and/or wire fraud, by which Plaintiffs refer to Defendants electronically filing documents with the Western District of Washington and with the Ninth Circuit, in accordance with their common interest

1    defense contract.  (Dkt. No. 4 at 37-43.)  Plaintiffs claim these filings constitute mail and/or wire

2    fraud because they, for example, "falsely claim[] a final judgment while omitting that there is no

3    final judgment" in an earlier state court case.  Id. at 41.

4        Plaintiffs' allegations are facially frivolous and fail to state a plausible claim for relief

5    under the applicable standard.  Counts 1-10 DISMISSED with prejudice.

6                    ii.     Counts 11-14, 19-22, 24-25, 27-33, 35-36 (Duplicative claims)

7        Counts 11-14, 19-22, 24-25, 27-33, and 35-36 are duplicative of claims from the Ryggs'

8    earlier federal suits, both of which have appeals pending before the Ninth Circuit, and are

9    DISMISSED with prejudice under Adams v. Cal. Dep't of Health Servs., 487 F.3d 684 (9th Cir.

10   2007).

11       "After weighing the equities of the case, the district court may exercise its discretion to

12   dismiss a duplicative later-filed action, to stay that action pending resolution of the previously

13   filed action, to enjoin the parties from proceeding with it, or to consolidate both actions."  Id. at

14   688.  "Plaintiffs generally have "no right to maintain two separate actions involving the same

15   subject matter at the same time in the same court and against the same defendant."  Id. (citation

16   omitted.)  "In dismissing the duplicative suit with prejudice, the district court acted to protect the

17   parties from vexatious and expensive litigation and to serve the societal interest in bringing an

18   end to disputes."  Id. at 693.

19       "To determine whether a suit is duplicative, we borrow from the test for claim

20   preclusion."  Id. at 688–89.  Courts examine four criteria when applying the test: (1) whether

21   rights or interests in the prior judgment would be destroyed or impaired by prosecution of the

22   second action; (2) whether substantially the same evidence is presented in the two actions; (3)

23   whether the two suits involve infringement of the same right; and (4) whether the two suits arise

24

1 out of the same transactional nucleus of facts. Id. at 689. The last of these criteria is the most

2 important. Id.

3      Dismissal under Adams is appropriate for claims that could have been raised in the first

4 action, even if they were not. Id. at 693 ("[Plaintiff] was required to bring at one time all of the

5 claims against a party or privies relating to the same transaction or event").

6      Plaintiffs essentially argue that their suit is not duplicative because their second federal

7 lawsuit, C13-864-JLR, was dismissed without prejudice and thus they are entitled to bring the

8 same claims once again in this third suit, despite their appeal to the Ninth Circuit. (See e.g., Dkt.

9 No. 76 at 1.) This is incorrect. See Adams, 487 F.3d at 688.

10      Counts 11-14 are based on allegedly forged state court orders. These mirror count 4 in

11 the first federal suit, and count 4 in the second federal suit.

12      Count 19, abuse of process, mirrors count 7 in the second federal suit.

13      Counts 20-22 relate to a 2013 temporary restraining order issued by a state court which

14 the Ryggs argue deprived them of property, interfered with pending federal proceedings, and

15 constituted malicious prosecution. These claims are materially similar to count 7 in the second

16 federal suit, and to the extent that they vary, they rely on the same facts and should have been

17 brought in the second suit.

18      Counts 24-25, assault and battery, mirror count 8 in the second federal action.

19      Count 27, fraud on state court, mirrors count 24 in the first federal suit, and count 9 in the

20 second federal suit.

21      Counts 28-29, lost monument and cloud on title, mirror counts 10-11 of the second

22 federal suit.

23

24

Count 30, abuse of state court proceedings, mirrors parts of counts 22, 29-35, 38-39, and 49 of the first federal suit, and count 12 of the second federal suit.

Counts 31-33, violation of the First Amendment and other constitutional rights by the WSBA, mirror count 13 in the second federal suit.

Counts 35-36, challenges to Washington's Amendment 80, mirror counts 9-10, 12-14, 43 and 47 of the first federal suit, and are materially similar to counts 1-3 of the second federal suit.

Counts 11-14, 19-22, 24-25, 27-33, and 35-36 DISMISSED with prejudice.

                    iii.     Counts 23, 26 (Supplemental jurisdiction declined)

Counts 23, injury to trees, and 26, malicious harassment, are state-law claims.  If a district court has dismissed all claims over which it has original federal jurisdiction, "[t]he district court[] may decline to exercise supplemental jurisdiction over" the remaining state-law claims.  28 U.S.C. § 1367(c).  DISMISSED.

                    iv.     Counts 15-18, 34 (Judicial immunity)

Counts 15-18 allege misconduct by Washington Supreme Court Commissioner Steven Goff for acts committed within his judicial capacity.

Judicial immunity applies to actions taken in error, maliciously, or in excess of authority.  Cleavinger v. Saxner, 474 U.S. 193, 199 (1985) (citation omitted).  Judges lose their immunity only when they act in the absence of all jurisdiction or perform acts which are not judicial in nature.  Id.

Counts 15-16 stem from a ruling made by Commissioner Goff regarding the production of privilege logs.  Rulings are judicial acts covered by judicial immunity.

Counts 17-18 appear to concern both acts taken in Commissioner Goff's judicial capacity and a joint defense agreement entered into by Commissioner Goff and other Defendants in

1  response to one of the Ryggs' earlier suits.  To the extent that these claims concern

2  Commissioner Goff's decision on recusal, they are covered by judicial immunity.  To the extent

3  that they concern his participation in a joint defense agreement, they are protected by the Noerr-

4  Pennington Doctrine, a principle of constitutional immunity established by the Supreme Court to

5  protect the First Amendment right to petition the government.  See Prof'l Real Estate Investors,

6  Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 57 (1993) (petitioning the government

7  includes litigation before judicial bodies).

8          Count 34 stems from a recusal decision made by Washington Supreme Court

9  Justices, acting in their judicial capacities, and is covered by judicial immunity.

10         Counts 15-18 and 34 DISMISSED.

11     III.     Motion to Declare Plaintiffs Vexatious Litigants

12         Defendants ask the Court to declare Plaintiffs Vexatious Litigants.  Motion GRANTED.

13         The All Writs Act expressly states that district courts "may issue all writs necessary or

14  appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of

15  law."  28 U.S.C. § 1651(a).  The Ninth Circuit has interpreted this statute to provide "district

16  courts with the inherent power to enter pre-filing orders against vexatious litigants."  Molski v.

17  Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir.2007) (citation omitted); see also De

18  Long v. Hennessey, 912 F.2d 1144, 1147 (9th Cir.1990) ("Under the power of 28 U.S.C. §

19  1651(a) [ ], enjoining litigants with abusive and lengthy histories is one such form of restriction

20  that the district court may take").

21         "[S]uch pre-filing orders are an extreme remedy that should rarely be used" because the

22  sanction "can tread on a litigant's due process right of access to the courts."  Molski, 500 F.3d at

23  1057 (citation omitted). The Ninth Circuit has outlined four factors for district courts to examine

24

1    before entering pre-filing orders.  See De Long, 912 F.2d at 1147–48; Molski, 500 F.3d at 1057.

2    First, a litigant must be provided with an opportunity to oppose the order before it is entered.  De

3    Long, 912 F.2d at 1147.  Second, the district court must create an adequate record for review.  Id.

4    Third, the district court must make substantive findings as to the frivolousness or harassing

5    nature of the litigant's actions.  Id. at 1148.  Lastly, the order must be narrowly tailored to closely

6    fit the specific vice encountered.  Id.

7          A.     Factor One

8         "'Due process requires notice and an opportunity to be heard.'"  De Long, 912 F.2d at

9    1147 (quoting In re Powell, 851 F.2d 427, 431 (D.C.Cir.1988)).  An individual has fair notice of

10    the possibility that she might be declared a vexatious litigant where defendants file a motion to

11    that end.  Molski, 500 F.3d at 1058; see also Robinson v. Tacoma Cmty. Coll., 2011 WL

12    6096295 (W.D. Wash. Dec. 7, 2011).

13         Plaintiffs contend they did not have adequate notice because while Plaintiff Dilworth is

14    registered to receive service electronically via CMECF, Plaintiff Rygg is not.  (Dkt. No. 76 at 9.)

15    While Plaintiffs attack the method of service of Defendants' Motion, they do not contend that

16    they lacked actual notice, and could not contend so because they did not lack actual notice.

17    Plaintiffs reside together, Plaintiff Rygg received notice via an external e-mail address, and

18    Plaintiffs filed a responsive pleading to Defendants' Motion indicating that they were aware of

19    the possibility that they might be declared vexatious litigants.  Plaintiffs' due process rights have

20    been sufficiently protected.

21          B.     Factor Two

22         "An adequate record for review should include a listing of all the cases and motions that

23    [leads] the district court to conclude that a vexatious litigant order [is] needed."  De Long, 912

24

1   F.2d at 1147 (citing <u>Martin–Trigona v. Lavien</u>, 737 F.2d 1254, 1260 (2d Cir.1984)).  At a

2   minimum, the record needs to show, in some manner, that the litigant's activities are numerous or

3   abusive.  <u>De Long</u>, 912 F.2d at 1147; <u>see also</u> <u>Robinson</u>, 2011 WL 6096295 (W.D. Wash. Dec.

4   7, 2011).

5        The litigation record in this dispute is extensive.  The declaration of John Tondini,

6   submitted by Defendants in support of this motion, contains court records of the Ryggs'

7   numerous state and federal suits, and of the Ryggs' numerous filings in each of those suits.  (Dkt.

8   No. 52.)  Having spent years in Washington State courts, the same dispute has already

9   manifested itself in three separate cases filed in U.S. District Court and two appeals to the Ninth

10  Circuit.  This case was stayed on September 12th, 2014, pending resolution of the fourteen

11  motions filed, (Dkt. No. 108), and on September 18th, 2014, Plaintiffs filed a fourth federal suit

12  with this Court.  (C14-1434-MJP.)  The fourth case is a continuation of the same dispute,

13  stemming from the same alleged injuries (bad faith harassment and prosecution, assault), and is

14  materially similar to counts 20, 24, 25, and 26 of the third federal suit.  Plaintiffs attempt to

15  circumvent the stay by filing an additional suit.

16       Plaintiffs behavior makes clear that their numerous, abusive filings will not cease absent

17  an order from the Court.  The records in this case and in the Ryggs' first two federal cases, 11-

18  1827-JLR and 13-864-JLR, are sufficient for review by the Ninth Circuit.  <u>See</u> <u>Brenden v. Sellen</u>

19  <u>Const. Co.</u>, 2013 WL 610964, *7 (W.D. Wash. Feb. 19, 2013).

20       C.      Factor Three

21       Before a district court issues a pre-filing injunction, "it is incumbent on the court to make

22  'substantive findings as to the frivolousness or harassing nature of the litigant's actions.'"  <u>De</u>

23  <u>Long</u>, 912 F.2d at 1148 (quoting <u>Powell</u>, 851 F.2d at 431).  With respect to frivolousness, a

24

district court must "look at 'both the number and content of the filings as indicia' of the
frivolousness of the litigant's claims." De Long, 912 F.2d at 1148 (quoting Powell, 851 F.2d at
431). "'An injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims
must not only be numerous, but also patently without merit.'" Molski, 500 F.3d at 1059 (quoting
Moy v. United States, 906 F.2d 467, 470 (9th Cir.1990)); see also Robinson, 2011 WL 6096295
(W.D. Wash. Dec. 7, 2011).

Plaintiffs' Response does not address the appropriateness of filing numerous suits and
numerous motions on the same claims, and instead argues the merits of their case, again
contending that "the 2004 lawsuit is defective and did not resolve the boundary dispute." (Dkt.
No. 76 at 7.) Plaintiffs functionally admit that they want to be able to relitigate their claims until
they get a favorable answer. (Dkt. No. 76 at 9.) Plaintiffs claim that they are entitled to do this
because their second federal suit was dismissed without prejudice. (Dkt. No. 76 at 1.) The
language of the order of dismissal, however, belies that assertion: "The Ryggs' complaint, in
many respects, simply repeats claims previously brought by the Ryggs in an earlier-filed action.
In the previous action, the court dismissed these claims for lack of subject matter jurisdiction.
The court still does not have subject matter jurisdiction over these claims and accordingly
GRANTS Defendants' motion to dismiss these claims." (C13-864-JLR, Dkt. No. 40 at 1.)

Washington State courts have already recognized a "pattern of abusive pleadings," (Dkt.
No. 51 at 2) and granted sanctions. (Dkt. No. 51 at 3.) The fact that sanctions were denied in the
first federal suit is irrelevant as to whether they are appropriate in the third federal suit based on
the same claims. (Dkt. No. 76 at 4.) Furthermore, the claims from the Ryggs' first and second
federal suits are currently before the Ninth Circuit (Ninth Cir. Nos. 12-35753, 13-35600 and 14-
35080), and pursuit of those claims once again in district court is legally frivolous. Griggs v.

1  Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982).

2       Plaintiffs' actions are frivolous and taken to harass.  Plaintiffs continue to seek to

3  relitigate their state court boundary dispute by filing duplicative suits in federal district court that

4  center on the same nucleus of facts, despite the pending appeals of their first two federal suits.

5  Plaintiffs' new allegations are legally and factually baseless, and force over thirty Defendants to

6  spend considerable time and resources further litigating the same dispute.

7       D.     Factor Four

8       Where a court enters a pre-filing order, the order must be narrowly tailored to closely fit

9  the specific vice encountered.  De Long, 912 F.2d at 1148.  "Narrowly tailored orders are needed

10  'to prevent infringement on the litigator's right of access to the courts.'"  Id. (quoting Sires v.

11  Gabriel, 748 F.2d 49, 51 (1st Cir.1984)).  The pre-filing restriction must fit the plaintiff's specific

12  practices.  See, e.g., Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1525

13  (finding that the injunction must describe in reasonable detail the act or acts sought to be

14  restrained); see also Robinson, 2011 WL 6096295 (W.D. Wash. Dec. 7, 2011).

15

16       The Court enters the following ORDER:

17       1.  Carolyn Rygg and Craig Dilworth are declared to be vexatious litigants;

18       2.  Effectively immediately, Rygg and Dilworth are prohibited from filing in this Court

19  any complaint, motion, petition, notice, or other paper or document, however styled, that is

20  related to any of the litigation discussed above, unless such filing is accompanied by (1) a motion

21  requesting permission to file the document, which includes a sworn affidavit with an explanation

22  of why the filing is not frivolous, and why the filing is not related to this litigation, the parties

23  involved, or its underlying facts; (2) a copy of this entire order; (3) proof that all monetary

24

1   sanctions previously imposed by a Judge of this Court have been paid in full, see <u>Hymes v.</u>

2   <u>United States</u>, 993 F.2d 701, 702 (9th Cir. 1993); and (4) the original and two copies of the

3   document sought to be filed; and

4        3.   Any attempted filing by Rygg or Dilworth will be received, but not filed, by the Clerk

5   of this Court and delivered to a Judge of this Court for review and a determination of whether the

6   proposed filing violates the terms and conditions of this Order.  If the filing is deemed to violate

7   this Order, a Miscellaneous file will be opened and Ryyg or Dilworth's proposed filing and an

8   Order prohibiting will be placed in the file, which will then be closed.  If the filing is deemed not

9   to violate this Order, and all the filing fees have been paid, a Civil file will be opened and Rygg

10  or Dilworth may proceed.

11       A copy of this Order shall be sent to the Chief Judge of the U.S. Court of Appeals for the

12  Ninth Circuit, the Clerk of the Court of the Ninth Circuit, and the Presiding Judge of the

13  Snohomish County Superior Court.

14       IV.    Motion for Rule 11 Sanctions

15       Defendants seek monetary sanctions against the Ryggs in the amount of $20,000.00,

16  payable to the Court, resulting from, and in order to deter repetition of, the Ryggs' Rule 11

17  violations.  Plaintiffs cross-move for sanctions, arguing that Defendants' motion for sanctions is

18  frivolous.  Defendants' motion is GRANTED in the amount of $10,000; Plaintiffs' cross-motion

19  is DENIED.

20       Rule 11 imposes a duty on the party signing a pleading "to certify that they have

21  conducted a reasonable inquiry and have determined that any papers filed with the court are well

22  grounded in fact, legally tenable and 'not interposed for any improper purpose.'"  <u>Cooter & Gell</u>

23  <u>v. Hartmarx Corp.</u>, 496 U.S. 384, 393 (1990), superseded by statute on other grounds; Fed. R.

24

ORDER ON MOTIONS- 16

1   Civ. P. 11.  The central purpose of the rule is to deter baseless filings.  Cooter & Gell, 496 U.S.

2   at 393.  "Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district

3   court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or

4   factually 'baseless' from an objective perspective, and (2) if the attorney [or party] has

5   conducted 'a reasonable and competent inquiry' before singing and filing it."  Christian v.

6   Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002).  The reasonableness inquiry is assessed

7   objectively. Conn v. Borjorquez, 967 F.2d 1418, 1421 (9th Cir. 1992).

8          Pro se litigants are subject to Rule 11 for filing baseless lawsuits. Warren v. Guelker, 29

9   F.3d 1386, 1390 (9th Cir. 1994).   When a court is considering sanctioning a pro se litigant, the

10  court "can properly consider plaintiff's ability to pay monetary sanctions as one factor in

11  assessing sanctions. It cannot, however, decline to impose any sanction, where a violation has

12  arguably occurred, simply because plaintiff is proceeding *pro se.* A contrary conclusion would

13  effectively place all unrepresented parties beyond the reach of Rule 11." Id.

14         "[A] RICO cause of action by definition involves complex litigation and high legal

15  costs," thus "an attorney's [or party's] responsibility to conduct reasonable prefiling

16  investigation is particularly important in RICO claims." Pack v. Hoge Fenton Jones & Appel,

17  Inc., 2013 WL 140027 at *6 (N.D. Cal. Jan. 10, 2013) (quoting Chapman & Cole v. Itel

18  Container Int'l B.V., 865 F.2d 676, 685 (5th Cir. 1989)).

19         In Pack, the district court awarded Rule 11 sanctions based, in part, on RICO claims

20  alleged by a client against his former attorneys arising from the client's dissatisfaction with the

21  results of the underlying action.  Id. at *1. The court explained that asserting RICO claims was

22  sanctionable under Rule 11 because the allegations were made: (i) without plausible allegations

23  of a pattern of racketeering; (ii) in order to transform a state-law dispute into a federal treble

24

1   damages claim; and (iii) for the improper purpose of avoiding state court jurisdiction.  Id. at

2   *5-6.

3        Here, Plaintiffs' RICO allegations are made without a plausible pattern of racketeering, in

4   an attempt to bring their already-adjudicated dispute before the federal courts once again.  The

5   criminal enterprise that Plaintiffs now allege is a joint defense contract by Defendants in

6   response to one of the Ryggs' earlier suits.  (Dkt No. 4 at 9, ¶ 44; Dkt. No. 76 at 2.)  Plaintiffs

7   allege that Defendants' predicate acts were the filing of defense briefs in this Court and in the

8   Ninth Circuit in accordance with that joint defense agreement.  (Dkt. No. 4 at 37-43.)  Plaintiffs'

9   RICO claims are legally and factually baseless and are intended for the improper purpose of

10  harassing Defendants into exhaustion or submission.

11       Plaintiffs' other claims are duplicative, have already been adjudicated in two earlier

12  federal suits, and are currently on appeal before the Ninth Circuit.  Plaintiffs appear disposed to

13  continue their duplicative, baseless legal onslaught until they find a court sympathetic to their

14  imagined world, or until Defendants submit to their will.  As part of this endeavor, Plaintiffs

15  have already filed numerous suits composed of numerous facially frivolous allegations.

16  Defendants should not be required to continue defending themselves from baseless claims in

17  perpetuity.

18       The Court agrees that monetary sanctions will serve to deter Plaintiffs from continuing

19  their harassment of Defendants and wasting additional court resources, but reduces the requested

20  sanctions from $20,000 to $10,000.  Defendants' Motion for Rule 11 Sanctions is GRANTED in

21  the amount of $10,000, payable to the Clerk of the Court, to be paid within 30 days of this order.

22  Plaintiffs' cross-motion is DENIED.

23

24

1

**Conclusion**

2          Defendants' Motions to Strike the Proposed Second Amended Complaint are

3 GRANTED; Defendants' Motions to Dismiss are GRANTED with prejudice; Plaintiffs' Motion

4 to Transfer Case, Plaintiffs' Motions to Disqualify, and Plaintiffs' Motion for a Preliminary

5 Injunction are DISMISSED as moot; Defendants' Motion to Declare Plaintiffs Vexatious

6 Litigants is GRANTED; Defendants' Motion for Sanctions is GRANTED; and Plaintiffs' Cross-

7 motion for Sanctions is DENIED.

8

9          The clerk is ordered to provide copies of this order to all counsel.

10          Dated this 6th day of October, 2014.

11

12

13

             Marsha J. Pechman
14          Chief United States District Judge

15

16

17

18

19

20

21

22

23

24